1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    BRYAN WEBB,                          Case No. 1:20-cv-00725-SKO (PC)

12                    Plaintiff,           **FINDINGS AND RECOMMENDATIONS
                                           TO GRANT IN PART AND DENY IN PART
13         v.                              DEFENDANTS' MOTION TO DISMISS
                                           AND TO DENY PLAINTIFF'S REQUEST
14    P. LLAMAS, et al.,                   FOR ENTRY OF DEFAULT**

15                    Defendants.          (Docs. 14, 27)

16                                         21-DAY DEADLINE

17                                         Clerk of the Court to Assign a District Judge

18

19         Before the Court is Defendants' motion to dismiss (Doc. 14) and Plaintiff's request for

20   entry of default (Doc. 27). For the reasons set forth below, the Court recommends that the motion

21   to dismiss be granted in part and denied in part, and that the request for entry of default be denied.

22   **I.    LEGAL STANDARDS**

23         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

24   sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a Rule

25   12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the

26   pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

27   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal

28   quotation marks and citations omitted). Dismissal is proper if there is a "lack of a cognizable legal

1  theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*
2  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

3       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
4  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
5  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court
6  "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light
7  most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998
8  (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of *pro se* prisoners
9  liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.
10  2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's
11  factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).

12  **II.    SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS**

13       Plaintiff is incarcerated at California State Prison, Corcoran. (Doc. 1 at 1.) From January
14  to July 17, 2019, Plaintiff served as a "Program Office Clerk and a member of the Men['s]
15  Advisory Coun[cil] ('MAC') . . . for . . . Facility C." (*Id.* at 4.) "As a MAC representative,
16  Plaintiff . . . advise[d] and communicate[d] with the warden and other staff [on] matters of
17  common interest and concern to the general inmate population." (*Id.*) Based on his knowledge
18  and experience, Plaintiff believes that correctional officers "often dislike[ ]" MAC representatives
19  because they raise matters of general concern. (*Id.*)

20       During Plaintiff's tenure as a MAC representative, correctional staff "excessively
21  searched" his cell because he filed administrative grievances. (*Id.* at 5.) On multiple occasions,
22  Correctional Officer Fugate told Plaintiff, "'I don't like you! I have a personal issue with you.'"
23  (*Id.*) Plaintiff raised the excessive cell searches with Officer Fugate's supervisors, Correctional
24  Sergeant Wilson and Correctional Captain Llamas. (*Id.*) On one occasion, Sergeant Wilson
25  responded, "'That['s] what happens when you file 602s;'" and, Captain Llamas replied, "'You
26  knew the job (being assigned a MAC Representative) was dangerous before you took it.'" (*Id.*)
27  Plaintiff's wife and mother raised the alleged harassment with prison supervisory staff and
28  contacted the prison's ombudsman. (*Id.* at 6.)

2

1    On July 17, 2019, Llamas "fire[d] Plaintiff from his office clerk position" and from his

2    position as a MAC representative for disobeying orders by a correctional officer to relinquish his

3    earrings. (*Id.* at 6.) Plaintiff alleges he was fired not because he disobeyed orders, but because he

4    filed administrative grievances and because his family members complained to prison supervisory

5    staff about alleged harassment. (*Id.* at 6-7.)

6    On July 18, 2019, Fugate conducted another "onerous search" of Plaintiff's cell, even

7    though he had just searched Plaintiff's cell the day before. (*Id.* at 7.) Fugate "intentionally

8    wreck[ed] . . . Plaintiff['s] cell and attempted to mix up [his] legal papers and personal [e]ffects."

9    (*Id.*) When Plaintiff asked about the search, Fugate replied, "'I don't like you and your write

10   ups[.] I'm going to get you out of my building one way or another.'" (*Id.*)

11   On July 23, 2019, Plaintiff was issued a serious rules violation report ("RVR") for

12   disobeying the orders to relinquish his earrings. (*Id.* at 8, 25.) Correctional Lieutenant Saucedo

13   conducted the hearing on the RVR on July 28, 2019, at which he found Plaintiff guilty of the

14   rules violation. (*Id.* at 8, 28, 33.) As a result, Plaintiff lost 30 days of good time-credits and 30

15   days of phone, yard, and packages privileges. (*Id.* at 8, 34.)

16   According to the Disciplinary Hearing Results, Plaintiff refused to attend or participate in

17   the RVR hearing. (*Id.* at 8, 28.) However, Plaintiff was never informed about the hearing until

18   after it had occurred. (*Id.* at 8-9.) Plaintiff alleges that Llamas, Wilson, and Saucedo conspired to

19   retaliate against him by "fabricat[ing] . . . the . . . p[u]rported refusal to call witnesses and

20   [Plaintiff's] waiver of attendance" at the hearing. (*Id.* at 9, 13.)

21   Approximately one month later, Llamas informed Plaintiff that she was "placing him on

22   'C-status' because of the RVR regarding the earrings," and that "Saucedo 'forgot' to impose this

23   disciplinary action . . . at the RVR hearing." (*Id.* at 9.) When Plaintiff asked how long he would

24   be on C-status, Llamas replied, "'Until your family stops calling the prison and you stop writing

25   602s.'" (*Id.* at 9-10.) As a result of his placement on C-status, Plaintiff lost his "yard crew job" as

26   well as visiting, packages, telephone, yard, and dayroom privileges. (*Id.*)

27   Plaintiff filed an appeal regarding the RVR hearing on September 13, 2019. (*Id.* at 10.)

28   Two days later, Correctional Officer Navarro searched his cell and confiscated a television, a

1    sheet, and soda bottles. (*Id.*) On October 11, 2019, Llamas and Wilson ordered Correctional

2    Officer Ruiz to again search his cell. (*Id.* at 12.)

3         Plaintiff filed suit on May 22, 2020. He alleges the defendants retaliated against him for

4    engaging in conduct protected by the First Amendment. (*Id.* at 3, 13.) He requests damages and

5    declaratory relief. (*Id.* at 18.)

6    **III.    DEFENDANTS' MOTION TO DISMISS**

7         Defendants move to dismiss Plaintiff's complaint on the grounds that (1) Plaintiff's claims

8    are barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2)

9    Plaintiff fails to state a cognizable claim of First Amendment retaliation against Defendants, (3)

10   Defendant Saucedo is entitled to absolute immunity, and (4) Defendants are entitled to qualified

11   immunity. (*See* Doc. 14.)

12        For the reasons set forth below, the Court finds that the favorable termination rule bars

13   Plaintiff's claims regarding the RVR issued against him, but not his remaining claims. Because

14   Plaintiff's allegations against Defendant Saucedo relate only to his role as the RVR hearing

15   officer, all claims against Saucedo are barred by the favorable termination rule, and he should

16   therefore be dismissed. The Court does not reach Defendants' argument that Defendant Saucedo

17   is entitled to absolute immunity or that Plaintiff fails to state a cognizable retaliation claim against

18   him.

19        The Court finds that Plaintiff states cognizable retaliation claims against the remaining

20   defendants, and Defendants fail to show that they are entitled to qualified immunity. Therefore,

21   the Court recommends that Plaintiff's claims of retaliation against Defendants Fugate, Llamas,

22   and Wilson be allowed to proceed, except for the claims stemming from the abovementioned

23   RVR.

24        **A.  Favorable Termination Rule**

25        In *Heck v. Humphrey*, the Supreme Court held that a state prisoner may not seek damages

26   in a section 1983 action if "a judgment in favor of the plaintiff would necessarily imply the

27   invalidity of his conviction or sentence[,] . . . unless the plaintiff can demonstrate that the

28   conviction or sentence has already been invalidated." 512 U.S. 477, 487 (1994). Per the

"favorable termination rule" of *Heck*, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

"In *Edwards v. Balisok*, [520 U.S. 641, 643-44,] the Supreme Court extended the favorable termination rule to prison disciplinary actions that implicated the prisoner's term of confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003). In *Edwards*, the Supreme Court held that a state prisoner may not seek declaratory relief or damages under section 1983 if a judgment in his favor would "necessarily imply the invalidity" of a disciplinary hearing and a resulting deprivation of good-time credits. 520 U.S. at 646-48.

Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). State prisoners must "use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Id.* at 81 (emphases removed).

In accordance with the foregoing principles, Plaintiff's claims are barred to the extent they necessarily imply the invalidity of the loss of good-time credits stemming from the RVR issued on July 23, 2019. Plaintiff is serving a determinate sentence of 13 years,[1] and thus his loss of good-time credits affected the length of his confinement. *Thomas v. Wong*, No. 3:09-cv-00733-JSW, 2010 WL 1233909, at *3 (N.D. Cal. 2010) In his complaint, Plaintiff alleges that prison officials failed to inform him of the hearing held on July 28, 2019, which prevented him from

---

[1] The Court takes judicial notice of an abstract of judgment provided by Defendants (Doc. 14-1 at 4-5) to establish the fact that Plaintiff is serving a determinate sentence of 13 years. Fed. R. Evid. 201(b)(2); *see also United States v. Valle-Montalbo*, 474 F.3d 1197, 1201-02 (9th Cir. 2007) (courts may take judicial notice of abstracts of judgment).

1   presenting witnesses or any type of defense against the RVR. (*See* Doc. 1 at 8-9.) Plaintiff alleges

2   the hearing officer, Defendant Saucedo, and Defendants Llamas and Wilson falsified documents

3   that stated that he had refused to call witnesses or to attend the hearing, in retaliation for

4   Plaintiff's filing of inmate grievances. (*Id.* at 9, 13.) If true, these facts would constitute clear due

5   process violations, which would necessarily imply the invalidity of the hearing and the resulting

6   punishment. *See Edwards*, 520 U.S. at 646-48; *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

7   Plaintiff does not allege that his good-time credits have been restored via *habeas corpus* or

8   otherwise. Therefore, Plaintiff's RVR-related claims are barred by the favorable termination rule.

9          In his opposition, Plaintiff contends that his claims are not barred because he challenges

10   only the fact that he was denied the opportunity to participate in the hearing, not the outcome of

11   the hearing. (*See* Doc. 21 at 13-14.) In other words, Plaintiff does not challenge the finding of

12   guilt or the loss of good-time credits *per se*. (*Id.* at 14.) However, the Supreme Court has made

13   clear that the favorable termination rule applies not only to direct challenges to the loss of good-

14   time credits, but also to claims that "*necessarily imply* the invalidity of the deprivation of . . .

15   good-time credits." *Edwards*, 520 U.S. at 646 (emphasis added). In *Edwards*, the plaintiff

16   contended that a judgement in his favor would not imply the invalidity of the loss of good-time

17   credits at a disciplinary hearing, since he challenged only the hearing's procedural defects and not

18   its results. *See id.* at 647-48. The Supreme Court rejected this argument, holding that the

19   plaintiff's "allegations of deceit and bias on the part of the [hearing officer] . . . necessarily

20   impl[ied] the invalidity of the punishment imposed." *Id.* at 648. Here, too, Plaintiff's claim that

21   Defendants, in retaliation, prevented him from presenting any defense at the RVR hearing would

22   necessarily imply the invalidity of the hearing and resulting punishment, regardless of whether

23   Plaintiff concedes that the results were appropriate.

24          Based on the foregoing, Plaintiff's claims regarding the July 23, 2019 RVR; the July 28,

25   2019 RVR hearing; and the punishment imposed at the RVR hearing are barred. Because

26   Plaintiff's only claims against Defendant Saucedo relate to his role as the hearing officer, all of

27   Plaintiff's claims against this defendant are likewise barred. Defendant Saucedo should therefore

28   be dismissed.

1   Plaintiff's remaining claims, however, are not barred. In his complaint, Plaintiff alleges

2   that Defendants Fugate, Llamas, and Wilson conducted or ordered excessive cell searches, fired

3   him from his positions as a program office clerk and a MAC representative, and/or placed him on

4   C-status in retaliation for his filing of inmate grievances. (Doc. 1 at 5-7, 9-12.) None of these

5   alleged actions was a part of the punishment imposed at the RVR hearing, which included only

6   the loss of good-time credits and the loss of phone, yard, and packages privileges. (Doc. 1 at 31-

7   32.) More generally, Plaintiff's allegations regarding excessive cell searches, the loss of the

8   abovenamed positions, and the placement on C-status do not contradict the findings at the RVR

9   hearing. Plaintiff does not, for example, challenge the cell search conducted on July 17, 2019,

10  which resulted in the finding of the earrings that formed the basis of the RVR. (Doc 21 at 18, 24;

11  *see also* Doc. 1 at 6-7.)  Plaintiff instead contends that cell searches carried out before and after

12  July 17, 2019, were excessive and retaliatory. (Doc. 1 at 5, 7, 10, 12.)  Plaintiff also alleges that

13  Llamas fired him from his office clerk and MAC positions on July 17, 2019, which is before the

14  RVR was issued on July 23, 2019, and which was not part of the punishment imposed at the RVR

15  hearing. (*Id.* at 6-8, 31-32.) Lastly, Plaintiff alleges that Llamas placed him C-status in August of

16  2019, one month after the RVR hearing. (Doc. 1 at 27.) Although, according to Plaintiff, Llamas

17  referenced the RVR hearing when placing him on C-status, (*id.*), such placement was not one of

18  the sanctions imposed at the hearing, (*id.* at 31-32).

19  For the foregoing reasons, Plaintiff's retaliation claims regarding cell searches (not

20  including the search carried out on July 17, 2019), the loss of his office clerk and MAC positions,

21  and his placement on C-status do not in call into question the validity of the RVR, the RVR

22  hearing, or the punishment imposed at the hearing. Accordingly, these claims are not barred by

23  the favorable termination rule of *Heck*.

24  **B. First Amendment Retaliation**

25  A claim of First Amendment retaliation has five elements. *Watison v. Carter*, 668 F.3d

26  1108, 1114 (9th Cir. 2012). First, a plaintiff must allege that he engaged in protected activity. *Id.*

27  For example, filing an inmate grievance is protected, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th

28  Cir. 2005), as is the right to access the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see*

*also Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985). Second, the plaintiff must show that the defendant took adverse action against him. *Watison*, 668 F.3d at 1114 (citation omitted). "Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* In other words, the plaintiff must claim the defendant subjected him to an adverse action *because of* his engagement in protected activity. *Rhodes*, 408 F.3d at 567. "Fourth, the plaintiff must allege that the official's acts would chill or silence a person of ordinary firmness from future [protected] activities." *Watison*, 668 F.3d at 1114 (internal quotation marks and citation omitted). "Fifth, the plaintiff must allege 'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution.'" *Id.* (quoting *Rizzo*, 778 F.2d at 532).

Plaintiff states cognizable retaliation claims against Defendants Fugate, Llamas, and Wilson. Plaintiff alleges that he engaged in protected activity, e.g., filing inmate grievances, and that these defendants subjected him to adverse actions because of his engagement in the protected activity, i.e., subjecting him to excessive cell searches, firing him from his office clerk and MAC positions, and/or placing him on C-status. (Doc. 1 at 5-7, 9-12.) Plaintiff does not allege that the defendants' actions would chill or silence a person of ordinary firmness; however, he alleges that he was harmed, and "harm that is more than minimal will almost always have a chilling effect." *Rhodes*, 408 F.3d at 568 n.11.

In their motion, Defendants contend that Plaintiff fails to establish a causal connection between Defendant Fugate's actions and Plaintiff's engagement in protected conduct. (Doc. 14 at 9-10.) The Court does not agree. Plaintiff alleges Fugate searched his cell multiple times, telling Plaintiff "on more than one occasion," "'I don't like you! I have a personal issue with you.'" (Doc. 1 at 5.) Plaintiff alleges that when he reported the "cell searches to [Fugate's] supervisors," Defendants Llamas and Wilson, the two replied, "'That['s] what happens when you file 602s,'" and, "'You knew the job (being . . . a MAC Representative) was dangerous before you took it.'" (*Id.*) Plaintiff further alleges that after Fugate searched his cell on July 18, 2019, Fugate stated, "'I don't like you and your write ups. . . I['m] going to get you out of my building one way or another.'" (*Id.* at 7.) These allegations are more than enough to establish a causal connection between Fugate's cell searches and Plaintiff's filing of inmate grievances.

1    Defendants next contend that their actions served legitimate penological purposes. (Doc.

2    14 at 10-11.) Defendants point to the fact that one of the cell searches uncovered the earrings that

3    Plaintiff had been ordered to relinquish, and another search uncovered an unauthorized television

4    in Plaintiff's possession. (*Id.* at 11.)

5    As an initial matter, the fact that two of the cell searches served valid penological

6    purposes (at least in hindsight) does not imply that *all* cell searches, taken together, served such a

7    purpose. The crux of Plaintiff's complaint is that the *number* of cell searches was excessive, and

8    thus unnecessary to maintaining order, safety, or security. In addition, Plaintiff alleges Fugate

9    searched his cell on July 18, 2019, "under the guise of se[arching] for" Plaintiff's earrings, even

10   though Fugate had just uncovered those earrings the day before. (Doc. 1 at 7.) Plaintiff states that

11   Fugate "intentionally wreck[ed] . . . [his] cell and attempted to mix up [his] legal papers and

12   personal [e]ffects." (*Id.*) If true, this particular search did not advance a legitimate correctional

13   goal.

14   Second, Defendants' contention that their actions served valid penological purposes

15   amounts to factual assertions that are disputed by Plaintiff. (*See, e.g.*, Doc. 1 at 5-7, 9-10.) For

16   example, Plaintiff alleges that he wore the earrings that were later confiscated for six months

17   prior to his being removed from his work assignments, (*id.* at 6), and that other inmates on C-

18   status were allowed to possess televisions when his was taken, (*id.* at 11). In addition, as stated

19   above, Plaintiff alleges that Defendants' cell searches were *excessive*, (*id.* at 5), and that Llamas

20   placed him on C-status one month *after* the RVR hearing regarding his refusal to relinquish his

21   earrings, (*id.* at 9-10). Liberally construed, these allegations imply that Defendants' actions were

22   unnecessary to maintaining security or to serving any other legitimate penological interest.

23   To resolve these factual disputes, the Court would need to resort to materials outside the

24   pleadings, such as affidavits from correctional officials, which it is unable to do on a motion to

25   dismiss. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008).

26   Highlighting this point, cases cited by Defendants in support of their argument, (Doc. 14 at 11-

27   12) involved motions for summary judgment, not motions to dismiss. *See Schroeder v.*

28   *McDonald*, 55 F.3d 454, 456 (9th Cir. 1995); *Knox v. Castaneda*, No. 13-cv-02985-WQH-RBB,

1    2018 WL 6649457, at *1 (S.D. Cal. 2018); *Gibbs v. Wood*, No. 15-cv-04115-PJH, 2018 WL

2    3159417, at *1 (N.D. Cal. 2018).

3         When liberally construing Plaintiff's factual allegations, and viewing the allegations in the

4    light most favorable to Plaintiff, the Court finds that Plaintiff provides sufficient factual matter to

5    state retaliation claims that are plausible on their face. *See Iqbal*, 556 U.S. at 678; *Hebbe v. Pliler*,

6    627 F.3d 338, 342 (9th Cir. 2010). Therefore, the Court recommends that the retaliation claims be

7    allowed to proceed, except for those barred by the favorable termination rule of *Heck*, as

8    discussed in section III.A, *supra*.

9         **C.  Qualified Immunity**

10        A defendant is entitled to "qualified immunity if one of two conditions are met. First,

11   immunity will be applied if the plaintiff has not 'alleged' . . . facts that would make out a

12   constitutional violation. . . Second, even if the Plaintiff has shown such a violation, the defendant

13   is entitled to qualified immunity if the constitutional right allegedly violated was not '"clearly

14   established" at the time of defendant's alleged misconduct.'" *A.D. v. California Highway Patrol*,

15   712 F.3d 446, 453-54 (9th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

16        Defendants contend that the first condition applies—that Plaintiff has failed to show that

17   they committed any constitutional violations. (Doc. 14 at 14-15.) As discussed above, the Court

18   disagrees, and finds that Plaintiff has pled sufficient facts to state cognizable retaliation claims in

19   violation of the First Amendment. Accordingly, Defendants have failed to show that they are

20   entitled to qualified immunity.

21        In their reply, Defendants assert for the first time that Plaintiff has failed to show that the

22   First Amendment rights allegedly violated were clearly established. (Doc. 26 at 7.) Because

23   Defendants did not raise this argument in their motion, the Court does not address it. *Nev. v.*

24   *Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (in general, parties "cannot raise a new issue for the

25   first time in their reply briefs") (internal quotation marks and citations omitted).

26   **IV.   PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT**

27        On August 23, 2021, Plaintiff filed a request for entry of default on the grounds that

28   Defendants failed to file a reply to his opposition to Defendants' motion to dismiss. (Doc. 27.) As

an initial matter, Defendants did file a reply on May 11, 2021, (Doc. 26)—which is optional, *see* Local Rule 230(l)—and does not provide a basis for an entry of default. The Court therefore recommends that Plaintiff's request be denied.

**V.     CONCLUSION, RECOMMENDATIONS, AND ORDERS**

For the reasons set forth above, the Court RECOMMENDS that:

1.  Plaintiff's request for entry of default (Doc. 27) be DENIED;

2.  Defendants' motion to dismiss the complaint (Doc. 14) be GRANTED IN PART and DENIED IN PART, as specified below;

3.  Plaintiff's retaliation claims regarding the July 23, 2019 RVR and the July 28, 2019 RVR hearing be DISMISSED;

4.  Defendant Saucedo be DISMISSED; and,

5.  Plaintiff's remaining claims of First Amendment retaliation against Defendants Fugate, Llamas, and Wilson be allowed to proceed.

The Court DIRECTS the Clerk of the Court to assign a district judge to this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 27, 2021**                    */s/ Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE