IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN WEBB, | Case No. 1:20-cv-00725-SKO (PC) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | (Doc. 51) |
| P. LLAMAS, et al., | |
| Defendants. | |

## I.    INTRODUCTION

This action proceeds on Plaintiff's First Amendment retaliation claims against Defendants Fugate, Llamas and Wilson. (*See* Doc. 32.)

On February 9, 2023, Defendants filed a motion for summary judgment addressing the merits of Plaintiff's claims. (Doc. 51.) Plaintiff opposed (Doc. 58) and Defendants replied (Doc. 63).

For the reasons discussed below, the Court grants Defendants' summary judgment motion.

## II.    FACTUAL ALLEGATIONS OF THE PLAINTIFF'S COMPLAINT

Plaintiff is incarcerated at California State Prison, Corcoran. (Doc. 1 at 1.) From January to July 17, 2019, Plaintiff served as a "Program Office Clerk and a member of the Men['s] Advisory Coun[cil] ('MAC') . . . for . . . Facility C." (*Id*. at 4.) "As a MAC representative, Plaintiff . . .

advise[d] and communicate[d] with the warden and other staff [on] matters of common interest and concern to the general inmate population." (*Id.*) Based on his knowledge and experience, Plaintiff believes that correctional officers "often dislike[ ]" MAC representatives because they raise matters of general concern. (*Id.*) During Plaintiff's tenure as a MAC representative, correctional staff "excessively searched" his cell because he filed administrative grievances. (*Id.* at 5.) On multiple occasions, Correctional Officer Fugate told Plaintiff, "'I don't like you! I have a personal issue with you.'" (*Id.*) Plaintiff raised the excessive cell searches with Officer Fugate's supervisors, Correctional Sergeant Wilson and Correctional Captain Llamas. (*Id.*) On one occasion, Sergeant Wilson responded, "'That['s] what happens when you file 602s;'" and, Captain Llamas replied, "'You knew the job (being assigned a MAC Representative) was dangerous before you took it.'" (*Id.*) Plaintiff's wife and mother raised the alleged harassment with prison supervisory staff and contacted the prison's ombudsman. (*Id.* at 6.)

On July 17, 2019, Llamas "fire[d] Plaintiff from his office clerk position" and from his position as a MAC representative for disobeying orders by a correctional officer to relinquish his earrings. (Doc. 1 at 6.) Plaintiff alleges he was fired not because he disobeyed orders, but because he filed administrative grievances and because his family members complained to prison supervisory staff about alleged harassment. (*Id.* at 6-7.)

On July 18, 2019, Fugate conducted another "onerous search" of Plaintiff's cell, even though he had just searched Plaintiff's cell the day before. (Doc. 1 at 7.) Fugate "intentionally wreck[ed] . . . Plaintiff['s] cell and attempted to mix up [his] legal papers and personal [e]ffects." (*Id.*) When Plaintiff asked about the search, Fugate replied, "'I don't like you and your write ups[.] I'm going to get you out of my building one way or another.'" (*Id.*)

On July 23, 2019, Plaintiff was issued a serious rules violation report ("RVR") for disobeying the orders to relinquish his earrings. (Doc. 1 at 8, 25.) Correctional Lieutenant Saucedo[1] conducted the hearing on the RVR on July 28, 2019, and found Plaintiff guilty of the rules violation. (*Id.* at 8, 28, 33.) As a result, Plaintiff lost 30 days of good time-credits and 30 days of phone, yard, and packages privileges. (*Id.* at 8, 34.)

---

[1]Defendant Saucedo was dismissed from this action on November 8, 2021. (Doc. 32.)

According to the Disciplinary Hearing Results, Plaintiff refused to attend or participate in the RVR hearing. (Doc. 1 at 8, 28.) Plaintiff alleges he was never informed about the hearing until after it had occurred. (*Id*. at 8-9.) Plaintiff alleges that Llamas, Wilson, and Saucedo conspired to retaliate against him by "fabricat[ing] . . . the . . . p[u]rported refusal to call witnesses and [Plaintiff's] waiver of attendance" at the hearing. (*Id*. at 9, 13.)

Approximately one month later, Llamas informed Plaintiff that she was "placing him on 'C-status' because of the RVR regarding the earrings," and that "Saucedo 'forgot' to impose this disciplinary action . . . at the RVR hearing." (Doc. 1 at 9.) When Plaintiff asked how long he would be on C-status, Llamas replied, "'Until your family stops calling the prison and you stop writing 602s.'" (*Id*. at 9-10.) As a result of his placement on C-status, Plaintiff lost his "yard crew job" as well as visiting, packages, telephone, yard, and dayroom privileges. (*Id*.)

Plaintiff filed an appeal regarding the RVR hearing on September 13, 2019. (Doc. 1 at 10.) Two days later, Correctional Officer Navarro searched his cell and confiscated a television, a sheet, and soda bottles. (*Id*.) On October 11, 2019, Llamas and Wilson ordered Correctional Officer Ruiz to search his cell again. (*Id*. at 12.)

Plaintiff alleges the defendants retaliated against him for engaging in conduct protected by the First Amendment. (Doc. 1 at 3, 13.) He requests damages and declaratory relief. (*Id*. at 18.)

### III.    LEGAL STANDARDS

#### Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv*., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v.*

*Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### First Amendment Retaliation

Prisoners have a First Amendment right to file prison grievances and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. Calif. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

//

//

//

//

//

1    **IV.   BRIEF SUMMARY OF THE PARTIES' POSITIONS**

2         **A.  Defendants' Summary Judgment Motion[2]**

3    Defendants contend Plaintiff has no evidence to support his retaliation claims against

4    Defendants Fugate and Wilson, and his allegations against Defendant Llamas are supported only

5    by speculation and hearsay. Defendants asserts Plaintiff's grievances and his family's emails did

6    not cause Defendants to retaliate against Plaintiff, as there is no causal link between the filing of

7    the grievances and the retaliatory conduct alleged, and the emails sent by members of Plaintiff's

8    family post-date the conduct alleged. Defendants contend they had a legitimate correctional

9    purpose for placing Plaintiff on C-status, searching his cell, and removing him from his clerk and

10   Men's Advisory Council ("MAC") positions. Alternatively, Defendants contend they are entitled

11   to qualified immunity. (Doc. 51-1.)

12        **B.  Plaintiff's Opposition[3]**

13   Plaintiff contends Defendant Llamas placed him on C-status because a lieutenant "forgot to

14   impose" a disciplinary action following a rules violation disposition, and that Llamas told him

15   that as long as his family continued to call the prison and he continued to file grievances, Plaintiff

16   would remain on C-status. Plaintiff asserts his cell was searched numerous times while he was on

17   C-status in retaliation for his writing grievances. Plaintiff contends Defendant Wilson fired

18   Plaintiff from his clerk position and directed Defendant Fugate to confiscate his earrings as a

19   result of Plaintiff's refusal to relinquish the earrings. Plaintiff acknowledges "Llamas could fire

20   him from his clerk position" for that reason, but Llamas could not fire Plaintiff from his MAC

21   representative position. Only a warden can do so where Plaintiff's actions presented a threat to

22   the facility security or the safety of others. Plaintiff contends Defendant Llamas assigned him to a

23   yard crew in retaliation for his filing grievances and for "his family calling to make identical

24   complaints." Llamas told Plaintiff "she would not get sick anymore from looking" at him.

25   _____

26   [2]Defendants' motion is supported by the declarations of Defendants Fugate, Llamas, Wilson, as well as
     those of Correctional Counselor II P. Williams and defense counsel Shiran Zohar. (Docs. 51-4 through
27   51-8.)

28   [3]Plaintiff's opposition is supported by his own declaration and the declarations of Machell Brookens,
     Etoya Webb, and Najah Chavis. (Doc. 58 at 17-25.)

Plaintiff asserts a July 18, 2019, cell search by Fugate was retaliatory and left his cell and property in disarray, "intentionally mixing up all his legal mail and pictures." Plaintiff contends when he asked Fugate why his cell was being searched after it had been searched the prior day, Fugate said, "'because I can, and I will search your cell again because I can. I could search your cell every day of the week if I wanted to and you cannot do shit about it. I do not like you or your write up (602/appeals). I am going to get you out of my building one way or another.'" He contends Defendants' conduct did not serve any legitimate penological purpose. Plaintiff contends Defendants Fugate, Llamas and Wilson knew excessive cell searches and their threats were a violation of his First Amendment rights. He asserts Defendants are not entitled to qualified immunity because they could not have believed their retaliatory acts were lawful. Plaintiff contends Defendants' motion should be denied because the Defendants all "played a role in retaliation." (Doc. 58.)

### C. Defendants' Reply

Defendants contend the undisputed facts and evidence show that Plaintiff's protected conduct post-dated the alleged retaliatory conduct. They assert Plaintiff's discovery responses, opposition and supporting declarations, and his deposition testimony, "largely agree" with their assertions. Other than his own speculation and belief, Defendants contend Plaintiff has offered no evidence connecting Defendants to retaliatory cell searches. Finally, Defendants assert it remains undisputed that searching Plaintiff's cell for contraband after he disobeyed orders, placing him on C-status due to significant disciplinary history, and removing him from his clerk and MAC positions for disciplinary reasons, were in furtherance of sound penological goals and would have been performed in any event. (Doc. 63.)

### V.   DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. Plaintiff Bryan Lamar Webb (Webb) was formerly a CDCR inmate.

2. At all relevant times, Webb was housed at California State Prison, Corcoran.

3. At all relevant times, Defendant Fugate was a correctional officer in Corcoran's Facility C, Building 3, and Defendant Wilson was a sergeant in the Facility C, Building 3.

4. Defendant Llamas was a captain in Facility C, Building 3 starting in April 2019.

5.  Plaintiff received a serious RVR for possession of a controlled substance (Log No. 5398047) on February 6, 2019, and he was found guilty of this RVR on March 23, 2019.

6.  Plaintiff received a serious RVR for failure to meet program/work expectations (Log No. 6547653) on February 22, 2019, and he was found guilty of this RVR on March 23, 2019.

7.  Plaintiff received a serious RVR for disobeying an order (Log No. 6648655) on March 11, 2019, and he was found guilty of this RVR on March 30, 2019.

8.  Plaintiff received a serious RVR for behavior which could lead to violence and lesser charge of failing to meet work obligations (Log No. 6685957) on March 13, 2019, and he was found guilty of this RVR on March 30, 2019.

9.  Plaintiff received a serious RVR for willfully obstructing a peace officer in the performance of duty (Log No. 6837569) on April 23, 2019, and he was found guilty of this RVR on May 25, 2019.

10. Plaintiff received a serious RVR on July 23, 2019, for disobeying an order (Log No. 6879908), and he was found guilty of this RVR on July 28, 2019.

11. Plaintiff received a serious RVR on October 17, 2019, for unauthorized acquisition of personal property (Log No. 6919099), and was found guilty of this RVR on October 23, 2019.

12. Within CDCR institutions, classification committees are responsible for determining an inmate's placement within an institution, transfer between facilities, program participation, work group, privilege group, and custody designation.

13. A classification committee is made up of numerous correctional staff, and no determination is made by any single individual.

14. If a classification committee determines an inmate is a program failure, the classification committee must set the inmate's Work Group and Privilege Group classifications to Group C. This is referred to as "C Status" or "C/C Status."

15. This classification system serves the legitimate correctional goal of preserving institutional order and discipline, by deterring inmates from violating prison rules and incentivizing rule-breaking inmates to once again comply with prison rules.

16. During the May 25[, 2019] hearing on the April 23[, 2019] RVR, Webb was accused of jamming his cell door with an inmate-manufactured door blocker and refusing to have his cell searched.

17. He was found guilty as charged for obstructing a peace officer in the performance of a duty pursuant to section 3005(d)(1) of Title 15.

18. After finding Webb guilty, the non-party hearing officer sanctioned Webb for this violation, including placing him on C-status for 90 days.

19. During Webb's August 21, 2019 classification committee hearing, following the months of disciplinary violations detailed above, Webb was placed on further C-status by the Classification Committee.

20. The Committee noted that Plaintiff "received two RVR's within 180 days … [d]ue to [Webb] receiving these two RVR's within 180 days, [Webb] is now eligible for WGPG C/C effective 8/21/19 for 91 days."

21. None of the Defendants were members of the August 21, 2019 Classification Committee, and none were involved in the determination to place Webb on C-status.

22. Officer Fugate was not the reporting officer in any of the RVRs Webb received, and Captain Llamas was only responsible for classifying three of the above RVRs as serious or administrative consistent with the RVR classification criteria requirements set forth in Title 15.

23. Captain Llamas did not decide the RVRs on the merits; those decisions were made by the non-party hearing officers.

24. Sergeant Wilson was the reviewing supervisor on the RVR that issued July 23, 2019.

25. Sergeant Wilson was not the issuing officer or senior hearing office[r], and not involved in any of the other Webb RVRs described above.

26. Webb began working as an Office Clerk on July 11, 2019 and was fired from that position six days later on July 17, 2019.

27. On July 17, 2018 [sic: 2019], Sergeant Wilson had observed Webb wearing earrings, which is prohibited in prison.

28. Sergeant Wilson then instructed a non-party officer to confiscate the earrings, each of which had a stone in them.

29. Webb refused to comply with the order and walked away back to the Program Office to speak with Sergeant Wilson.

30. Sergeant Wilson then ordered Webb to relinquish the earrings, and Webb placed the earrings into an envelope and gave them to custody staff to mail home.

31. Staff later realized that the stones had been removed from the earrings.

32. Sergeant Wilson then ordered Officer Fugate to search Webb's cell.

33. Webb refused to let his cell be searched, and therefore no cell search receipt was issued.

34. The following day Sergeant Wilson again ordered Officer Fugate to search Webb's cell, and at that point the stones that were removed from the earrings were found.

35. Staff then placed those stones in an envelope to mail home.

36. The stones were removed from Webb's cell as contraband, because a precious item such as jewelry stones could potentially make Plaintiff a target for theft and because items such as jewelry are tantamount to currency that can be used for buying or trading for other contraband.

37. MAC representatives are supposed to set a good example for the general prison population, including by following orders.

38. Captain Llamas removed Webb from his Program Clerk job assignment and his MAC representative position on July 17, 2019, after discovering that Webb had repeatedly refused to comply with orders to relinquish his contraband earrings and was refusing to allow his cell to be searched.

39. There are a wide number of times and reasons that inmate's cells are searched on a regular basis. Inmate cells are searched randomly on a daily basis.

40. Cells are also regularly searched when any given facility is on a Modified Program.

41. Facility C, Building 3, where Webb lived during the relevant time period, was on a Modified Program during much of 2019 due to factors unrelated to Webb, such as riot concerns among Security Threat Groups (STG) groups.

42. Additional random cell searches were conducted during that time in order to combat concerns regarding violence between the STGs, including to find dangerous contraband.

43. At least 3 random cell searches were required to be performed by officer, per shift.

44. This amounts to 90 cell searches within a given building per month by that one officer.

45. There are 100 cells in Building 3 on Facility C, where Webb housed within the relevant time period.

46. Webb's cell was searched five times while he was on C-status between May 25, 2019 and November 19, 2019: on July 18, 2019, September 11, 2019, October 11, 2019, October 15, 2019, and October 28, 2019.

47. Contraband televisions—which are not permitted while an inmate is on C-status—were found in Webb's cell on September 11, 2019 and October 11, 2019.

48. Sergeant Wilson ordered the July 18, 2019 search for contraband earrings and Officer Fugate performed that search.

49. Webb has no evidence—only speculation—that Captain Llamas was involved in any of the cell searches he complains about.

50. Webb's only evidence to support his allegation that Captain Llamas removed him from his MAC representative position is his unsubstantiated "belief."

51. The grievances Webb alleges he was retaliated against for filing (Log Nos. COR-19-05237 and COR-19-06061), were filed *after* he was removed from his program clerk position and MAC representative position.

52. Webb's only evidence to support his retaliation claim for filing grievances is that "Corcoran does not like grievances."

53. None of the third-party emails Webb identifies as the reason for the retaliatory conduct against him were directed to any of the Defendants, or to anyone at the CSP-Corcoran; the emails are to officials at CDCR headquarters and other politicians.

54. There is no evidence that any of the Defendants were aware that any of those emails were ever sent.

55. Neither Sergeant Wilson nor Captain Llamas ever mentioned anything to Webb about his family calling or emailing.

56. Webb's allegation that he was placed on C-status for a retaliatory purpose is based on his "belief."

57. None of the Defendants performed or ordered the searches of Webb's cell conducted on September 11, 2019, October 11, 2019, October 15, 2019, and October 28, 2019.

58. There is no evidence that a July 17, 2019 [search] of Webb's cell ever took place.

59. Contraband earrings were found during the July 18[, 2019] search of Webb's cell.

60. Webb's allegation that his cell was searched in retaliation for filing grievances is based on his "belief."

61. Sergeant Wilson was not involved in Webb's removal from his MAC position.

62. Webb believes that Wilson was involved in the decision to remove him from his clerk position, because he "disliked" Webb.

63. Wilson was not involved in the searches of Webb's cell conducted on October 11, 2019[,] October 15, 2019 or on October 28, 2019.

64. Webb "believes" that Captain Llamas told Sergeant Wilson about his grievances, but "doesn't know" whether she did.

65. Webb believes that Sergeant Wilson ordered the July 18[, 2019] search because he did "not like him" and because he was wearing earrings.

66. Webb's disciplinary history and his recent repeated failure to comply with orders interfered with the orderly operation of the prison, justifying his removal from his clerk position and as a MAC representative.

(Doc. 51-2.)

*Evidentiary Matters*

Despite receiving notice concerning the requirements for opposing a motion for summary judgment, Plaintiff has failed to comply with Local Rule 260(b) in opposing Defendants' motion for summary judgment. This Court's Local Rule 260(b) provides, in pertinent part:

> **Opposition**. Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers. See L.R. 133(j).

(*See also* Doc. 51-3 [*Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)].) Here, Plaintiff did not reproduce Defendants' itemized facts, nor did Plaintiff admit or deny those facts. (*See* Doc. 58.) Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts not disputed by his complaint or other submissions. *See, e.g*., *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## VI.   DISCUSSION

Defendants have met their initial burden on summary judgment of informing the Court of the basis for the motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact. *In re Oracle Corp.*, 627 F.3d at 387; Fed. R. Civ. P. 56(c)(1)(A), (B). Because Defendants have met their initial burden, the burden then shifts to Plaintiff. *Matsushita*, 475 U.S. at 586-87. Neither Plaintiff's opposition nor his sworn declaration meet his burden on summary judgment. Plaintiff has failed to expressly deny any of Defendants'

undisputed material facts, and even assuming Plaintiff's opposition and declaration serve as denials of Defendants' factual assertions, Plaintiff has failed to "show more than the mere scintilla of evidence" required to establish a genuine issue of material facts exists. *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 252).

**A.  There Is No Evidence To Support Plaintiff's Retaliation Claim Against Fugate**

Plaintiff alleges Defendant Fugate searched his cell in retaliation for Plaintiff filing grievances and because Fugate "didn't like him." Plaintiff's allegations of Fugate's retaliatory cell searches are not supported by the evidence.

Although Plaintiff complains the cell searches of September 11, October 11, October 15 and October 28, 2019, were performed in retaliation for Plaintiff's filing grievances, coupled with the complaints asserted by his family, the evidence reveals Defendant Fugate was not involved in those searches. (Docs. 51-2, ¶ 57 & 51-6 [Fugate Decl.] at 2, ¶ 7; Webb Depo., 62:23-63:14, 68:17-25, 69:21-72:8 & 74:1-4.) Regarding Plaintiff's allegations that his cell was searched on July 17 and July 18, 2019, the record reveals no evidence of a cell search conducted on July 17, 2019. (Docs. 51-2, ¶ 58 & Doc. 51-6 at 2, ¶¶ 9, 13.) And the record reveals the July 18, 2019, cell search was conducted by Fugate at the direction Defendant Wilson because Plaintiff was in possession of contraband earrings and had refused to allow a previous search for the stones missing from the earrings. (Docs. 51-2, ¶¶ 34, 48 & 51-6 at ¶¶ 10, 13.) Even assuming Fugate disliked Plaintiff, the July 18, 2019, search was conducted not in retaliation for Plaintiff's grievances or his family's complaints (discussed in VI. D., *ante*), but for a legitimate penological purpose: the search for contraband.

Plaintiff has failed to meet his burden. *Matsushita*, 475 U.S. at 587. Defendant Fugate is entitled to summary judgment.

//

//

//

**B.  There Is No Evidence To Support Plaintiff's Retaliation Claim Against Wilson**

Plaintiff alleges Defendant Wilson retaliated against him by removing him from his MAC representative and clerk positions and ordered Plaintiff's cell be search. Plaintiff's allegations of Wilson's retaliatory conduct are not supported by the evidence.

Concerning Plaintiff's removal from the MAC representative position, this record reveals Plaintiff testified at his deposition that he had no evidence Wilson was involved. (Webb Depo., 84:7-85:2.) Wilson himself declares he has "no knowledge as to when or why [Plaintiff] became a MAC representative or when or why he was no longer a MAC representative. I was not involved in any decision regarding Plaintiff and the MAC." (Docs. 51-2, ¶ 61 & 51-4 [Wilson Decl.] at 2, ¶ 6.) As for the clerk's position, Plaintiff testified at his deposition that he believed Wilson disliked him and was involved in his removal from the clerk position. (Docs. 51-2, ¶ 62; Webb Depo., 52:20-53:15.) Even assuming Wilson did not like Plaintiff, that dislike in and of itself is insufficient to create a genuine issue of material fact as to Wilson's alleged retaliatory conduct. *Summers v. Teichert & Son, Inc*., 127 F.3d 1150, 1152 (9th Cir. 1997) ("[A] mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.' Summary judgment may be granted if 'the evidence is merely colorable ... or is not significantly probative'"); *see also, e.g*., *Price v. California Dept. of Corrections*, No. CIVS 041235 GEB DAD PS, 2006 WL 707407, at *3 (E.D. Cal. Mar. 21, 2006) (speculation that supervisors did not like plaintiff or Black people does not constitute evidence from which a reasonable trier of fact could find in plaintiff's favor)., The Court notes that Wilson's declaration states Defendant Llamas removed Plaintiff from the clerk's position due to Plaintiff's failure to comply with the order to relinquish his earrings. (Doc. 51-4 at 2, ¶ 5.) Defendant Llamas' declaration supports Wilson's statement. (*See* Doc. 51-5 [Llamas Decl.] at 2, ¶ 8.)

As for Plaintiff's allegations that Wilson ordered cell searches in retaliation for Plaintiff's filing grievances, the record reveals Plaintiff testified at his deposition that he does not know whether Wilson was involved in any of the four cell searches at issue. (Webb Depo., 62:20-22, 63:1-14, 69:1-5, 73:24-25.) Plaintiff's allegations that Wilson ordered Plaintiff's cell be searched

1  in retaliation is nothing more than speculation. *Matsushita*, 475 U.S. at 587; *Wood*, 753 F.3d at

2  905; *Summers*, 127 F.3d at 1152.

3       Concerning the search of Plaintiff's cell on July 18, 2019, Defendants' undisputed facts

4  reveal Wilson ordered the search to seek contraband in the form of stones that had been removed

5  from the earrings Plaintiff was ordered to relinquish. (Docs. 51-2, ¶ 48 & 51-4 at 3, ¶ 11.)

6  Plaintiff also agreed at his deposition that Fugate confiscated the earrings from his cell as

7  contraband. (Webb Depo., 100:10-12.) When asked why he believed this search was in retaliation

8  for his filing grievances, Plaintiff testified "I can't say specifically this cell search was done with

9  filing grievances, but I would believe so because of the remarks that was said to me from Captain

10  Llamas as well as Wilson. And when Fugate came to search my cell, he directly told me that this

11  was from the captain. Excuse me. Scratch that. From the sergeant." (Webb Depo., 100:19-25.)

12  Plaintiff further testified, "Not specifically that it was for a grievance, but Fugate told me Wilson

13  told him to search my cell" and he "just believe[s] from the comments that was made about

14  [Wilson] saying he didn't like me and behind the earrings as well." (Webb Depo., 102:24-103:6.)

15  Plaintiff testified he believed Wilson did not want him to wear the earrings and that it "was about

16  that as well as my family calling and complaining." (Webb Depo., 103:9-13.) Plaintiff's

17  testimony about Wilson's dislike of him and/or his earrings and his own beliefs are simply not

18  sufficient to overcome Defendants' evidence that the July 18, 2019 cell search was conducted to

19  search for contraband.

20       Plaintiff's testimony regarding his "family calling and complaining" also fails to support his

21  allegation because that communication post-dated the July 18, 2019, cell search.[4] Even viewing

22  Plaintiff's testimony that Wilson did not like him or his earrings favorably, Plaintiffs' beliefs do

23  not create a genuine issue of material fact and are not significantly probative of his retaliation

24  claim. *Wood*, 753 F.3d at 905; *McCollum*, 647 F.3d at 882-83; *Summers*, 127 F.3d at 1152.

25       In sum, Defendant Wilson is entitled to summary judgment.

26  //

27

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [4]Plaintiff's family's communications are discussed in depth in VI., D., *ante*.

### C.  The Evidence Concerning Plaintiff's Retaliation Claim Against Llamas Is Speculative

Plaintiff alleges Defendant Llamas ordered cell searches and had him removed from his clerk and MAC representative positions in retaliation for Plaintiff filing grievances and her dislike of him. Plaintiff's allegations concerning retaliatory conduct by Llamas lack supporting evidence. Regarding Llamas and the searches of Plaintiff's cell, Plaintiff testified as follows:

1.   When asked about a cell search conducted September 11, 2019, Plaintiff testified he "think[s] every cell search was directed by Captain Llamas that was me being searched by myself and not other inmates. That's just my basis." (Webb Depo., 59:17-60:1.) The following exchange then occurred:

> Q.    I just want to know what's the basis for your belief that every cell search that you were searched was directed by Captain Llamas.
> A.    Well, I told you a few minutes ago. One of the searches that was done by officer - - like I said, he told me Officer Llamas.
> Q.    Right. But you just testified that you believe all the searches that were done on you were directed by Captain Llamas.
> A.    No.
> Q.    That's not correct?
> A.    No. That's not true.
> …
> Q.    Okay. So these four cell searches you believe were ordered by Captain Llamas in retaliation for filing grievances. Is that fair? Is that your position?
> A.    Yes. Yes. (Webb Depo., 60:5-23.)

2.   When asked whether Llamas ordered the July 18, 2019 cell search, Plaintiff testified "No. I'm not sure she had anything to do with it." (Webb Depo., 103:14-20.)

3.   When asked whether Llamas ordered the October 11, 2019 cell search, Plaintiff testified "I don't know. I believe so" and that his belief was based on their "prior history" and her dislike of him. (Webb Depo., 69:6-14.)

4.   Regarding the October 15, 2019 cell search, Plaintiff testified that the correctional officer who performed the search did not tell him Llamas ordered the search, but that Plaintiff believes the search was retaliatory because he filed grievances and because his cell had been search four days prior, and that "captains and lieutenants" give the orders. (Webb Depo., 70:11-8, 24.) He also testified he had "no clue" why his cell was searched

1   that day "besides me feeling that it had something to do with the captain." (Webb Depo.,

2   71:9-12.)

3       5.      Regarding the October 28, 2019 cell search, asked if he knew whether Llamas

4   ordered that search, Plaintiff testified "No. I don't know." (Webb Depo., 73:21-23.)

5   In sum, Plaintiff's testimony is nothing more than speculation. Plaintiff's beliefs are insufficient

6   to create a genuine issue of material fact. *Matsushita*, 475 U.S. at 587; *Wood*, 753 F.3d at 905;

7   *Summers*, 127 F.3d at 1152.

8       Plaintiff's allegations concerning Llamas removing him from his MAC representative and

9   clerk positions in retaliation for his having filed grievances, are unsupported and therefore equally

10  insufficient to create a genuine issue of material fact. At his deposition, Plaintiff testified other

11  inmates told him "she said about me being removed" and that was his "belief, yes" that Llamas

12  ordered he be removed from the representative position for that reason. (Webb Depo., 85:7-22.)

13  When asked whether Llamas told him she was removing him as a MAC representative, Plaintiff

14  testified he did not recall "her saying that, but she could have." (Webb Depo., 85:23-86:1.) Asked

15  for any additional evidence supporting his belief that Llamas removed him from his position as

16  MAC representative in retaliation for Plaintiff filing grievances, Plaintiff testified Llamas told

17  him "to not file 602's or grievances" and to "see what would happen if that would happen if I

18  continued to file grievances." (Webb Depo., 87:2-10.) Plaintiff submitted two grievances (Log

19  Nos. ending in 6061 and 5237) in response to Defendants' request for production of documents;

20  at his deposition, Plaintiff agreed the grievances were filed after he had been relieved of his MAC

21  representative and clerk positions. (Webb Depo., 89:7-90:15.) Plaintiff testified he had no other

22  evidence to support his claim other than that "[e]very grievance" he submitted "pretty much [he]

23  felt retaliated on" and that Corcoran staff "don't like grievances." (Webb Depo., 90:22-91:13.)

24  Thus, the only evidence offered by Plaintiff, other than speculation and belief, contradicts his

25  claim that Llamas removed him from his MAC and clerk positions in retaliation for his filing

26  grievances. Simply put, Plaintiff's testimony and evidence are insufficient to create a genuine

27  issue of material fact. *Celotex*, 477 U.S. at 323 (if the nonmoving party fails to show there is a

28  genuine issue for trial, "the moving party is entitled to judgment as a matter of law"); *Carmen v.*

1 | *San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a

2 | defendant acted from an unlawful motive, without evidence supporting that belief, is no more

3 | than speculation or unfounded accusation about whether the defendant really did act from an

4 | unlawful motive"); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir.1996) ("[M]ere

5 | allegation and speculation do not create a factual dispute for purposes of summary judgment);

6 | *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) (hearsay evidence

7 | may not be considered in deciding whether material facts are at issue in summary judgment

8 | motions); *see also Percival v. Clark*, No. 1:09-cv-01699-MJS PC, 2013 WL 238907, at *3 (E.D.

9 | Cal. Jan. 22, 2013) ("Plaintiff claims, on the other hand, are merely that, claims unsupported by

10 | any competent evidence and wholly dependent on Plaintiff's speculation and belief that

11 | Defendant Nail initiated the search and planted the weapon. Plaintiff has failed to meet his burden

12 | in responding to Defendant Nail's motion for summary judgment").

13 | In sum, Defendant Llamas is entitled to summary judgment on Plaintiff's retaliation claims

14 | concerning cell searches and Plaintiff's removal from the clerk and MAC representative

15 | positions.

16 | **D.  Plaintiff's Grievances and His Family's Emails Do Not Support His Retaliation**

17 | **Claims**

18 | Defendants contend Plaintiff fails to causally link the filing of two grievances he identified

19 | in discovery and to which he testified during his deposition, to the alleged retaliatory conduct.

20 | Defendants also contend the emails sent by Plaintiff's family were sent after the alleged

21 | retaliatory conduct occurred so that communication cannot amount to cause for retaliatory

22 | conduct.

23 | The Court has reviewed the emails and correspondence sent by Plaintiff's family. (Doc. 51-

24 | 8 at 57-68.) It has also reviewed the declarations of Machell Brookens, Najah Chavis, and Etoya

25 | Webb (*see* Doc. 51-8 at 51-56; Doc. 58 at 17-19, 22-25) and grievance Log Nos. 19-06061 dated

26 | September 13, 2019, and 19-05237 dated August 5, 2019 (Doc. 51-8 at 70-100).

27 | <u>The Emails</u>

28 | A review of the email and correspondence discovered by Plaintiff reveals the following:

19

1. Etoya Webb emailed Ombudsman@cdcr.ca.gov on August 26, 2019, addressing excessive and retaliatory cell searches, Plaintiff's removal from his clerk position in retaliation for filing grievances, and cancellation of a family visit following a serious RVR. The email states Etoya Webb and her mother-in-law contacted "Chief assistant Warden Anthony Peterson" and "lieutenant Johnson CC2" on July 22, 2019. Further, it states Etoya Webb spoke with "Mrs. Wright my husbands Counselor" on August 6, 2019. (Doc. 51-8 at 57-59.)

2. Machell Brookens emailed Etoya Webb on January 21, 2021, recounting previous contact Brookens had with "assistant Warden Peterson" on July 22, 2019 (Doc. 51-8 at 62), an email from Brookens directed to Congresswoman Lucille Roybal-Allard and Senator Kamala Harris on August 22, 2019 (*id*. at 62-63), an August 30, 2019 response from Roybal-Allard referring Plaintiff's family to Senator Bob Archuleta (*id*. at 63-64), a meeting with Senator Archuleta's assistant Tony Perez on September 15, 2019 (*id*. at 63), and a statement that the Senator's office contacted "Cdc in Sept, Oct and Nov 2019" regarding the family's concerns (*id*. at 63).

3. Najah Chavis emailed ralph.diaz@cdcr.ca.gov and Jeffrey.callison@cdcr.ca.gov on May 12, 2020, concerning "COVID-19 concerns." The email states Chavis with "Lieutenant Anthony Peterson" on that date and refers to an earlier conversation of May 1, 2020. (Doc. 58-1 at 66.) On May 1 and May 9, 2020, Chavis also expressed concerns concerning COVID-19 and Plaintiff's health, although there is no indication to whom that email content was directed. (*Id*. at 66-68.)

Plaintiff alleges Defendants retaliated against him after his family contacted the prison and complained about his treatment, but the evidence does not support his claims. The family email evidence is dated *after* Plaintiff's removal from the clerk and MAC representative positions on July 17, 2019 and the July 18, 2019 cell search, and references contacts made *after* those events. Thus, Plaintiff's family's calls and/or emails did not cause Plaintiff to be removed from the clerk

1    and MAC representative positions or cause his cell to be searched on July 18, 2019, because the

2    family's contacts all post-dated those events. Said another way, conduct occurring in mid-July

3    2019 by Defendants cannot be retaliatory in response to Plaintiff's family's communications

4    where those communications did not begin until July 22, 2019. *Rhodes*, 408 F.3d at 567-68.

5          Moreover, none of the correspondence by Plaintiff's family is directed to Defendants

6    Fugate, Llamas or Wilson. While Plaintiff alleges in his complaint that Fugate, Llamas and

7    Wilson made verbal references to his family contacting the prison and complaining, as noted,

8    Plaintiff's evidence concerning that contact post-dates the alleged comments by Defendants and

9    thus negates those assertions. *Celotex Corp.*, 477 U.S. at 322 (summary judgment should be

10   entered, after adequate time for discovery and upon motion, against a party who fails to make a

11   showing sufficient to establish the existence of an element essential to that party's case, and on

12   which that party will bear the burden of proof at trial); *Matsushita*, 475 U.S. at 586 n.11.

13                                      The Grievances

14         Plaintiff identifies two grievances in support of his retaliation claims against Defendants. A

15   review of the documentation reveals that both were submitted *after* Plaintiff had been removed

16   from his clerk and MAC representative positions, and *after* the July 18, 2019, cell search. Plaintiff

17   agreed during his deposition that both grievances were submitted after he was removed from the

18   clerk and MAC representative positions. (Webb Depo., 89:7-90:15.) Alleged retaliatory or

19   adverse conduct by Defendants that occurs before Plaintiff's protected activity—the filing of

20   grievances—does not amount to or create a genuine issue of material dispute. *See, e.g., Garcia v.*

21   *Diaz*, No. 5:20-cv-02564-FLA (MAA), 2021 WL 4775633, at *8 (C.D. Cal. Aug. 24, 2021) ("the

22   SAC alleges that Plaintiff did not file his grievances until February 14, 2020; March 13, 2020;

23   and March 25, 2020 []—that is, after CDCR Defendants had enacted the new regulations [on

24   February 1, 2020]. 'Logic demands that any protected activity engaged in by a plaintiff that is the

25   basis for a claim of retaliation must *precede* the defendant's retaliatory act,'" citing *Kelley v.*

26   *Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1143 (E.D. Cal. 2010)); *Elder v. Silva*, No. 2:16-CV-

27   1925-TLN-DMC-P, 2021 WL 1102996, at *9-10 (E.D. Cal. Mar. 23, 2021) ("Plaintiff's

28   retaliation claim against Defendant Silva fails due to a timing problem" because the alleged

adverse activity occurred before the alleged protected activity). In fact, Plaintiff's evidence reveals he cannot establish Defendants "took some adverse action against" him "because of" the grievances. *Rhodes*, 408 F.3d at 567-68. The Court agrees with Defendants that the July 19, 2019, search "is the only search Webb testified that he believed Wilson and Fugate were directly involved in ordering or executing." (Doc. 51-1 at 19.) Thus, Wilson and Fugate's involvement in the search of Plaintiff's cell on July 19, 2019, could not have been in retaliation for grievances filed on August 5, 2019 and September 13, 2019.

Plaintiff's remaining evidence for this claim is his allegation that Corcoran staff do not like grievances. Plaintiff's testimony is insufficient to create a genuine issue of material fact because it is speculative and conclusory. *Celotex*, 477 U.S. at 323; *McCollum*, 647 F.3d at 882-83; *Summers*, 127 F.3d at 1152; *Price*, 2006 WL 707407, at *3. Nor can those grievances amount to a "substantial" or "motivating" factor behind challenged conduct as concerns Defendants Fugate and Wilson, or Defendant Llamas. *Brodheim*, 584 F.3d at 1269, 1271. To the extent Plaintiff testified at his deposition that "[e]very grievance that I put in pretty much I felt retaliated on," his testimony is insufficient to create a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (mere allegation and speculation do not create a factual dispute for purposes of summary judgment); *Elder v. Silva*, No. 2:16-CV-1925-TLN-DMC-P, 2021 WL 1102996, at *9-10 (E.D. Cal. Mar. 23, 2021) ("Plaintiff's retaliation claim against Defendant Silva fails due to a timing problem" because the alleged adverse activity occurred before the alleged protected activity); *see also Garcia v. Diaz*, No. 5:20-cv-02564-FLA (MAA), 2021 WL 4775633, at *8 (C.D. Cal. Aug. 24, 2021) (same).

In sum, Plaintiff has not established a genuine issue of material fact and Defendants are entitled to summary judgment.

### E.  Defendants' Actions Had a Legitimate Correctional Purpose

Defendants contend the undisputed evidence demonstrates that all of the alleged retaliatory conduct was done for legitimate penological purposes. Defendants assert Plaintiff has failed to meet his burden of proving the absence of a legitimate correctional goal—an element of a retaliation claim—entitling Defendants to summary judgment. (Doc. 51-1 at 21-25.)

Prisoners advancing retaliation claims under section 1983 must demonstrate that (1) prison officials retaliated against them for exercising their constitutional rights; and (2) the retaliatory action did not advance legitimate penological goals, such as the preservation of institutional order, discipline, security, and rehabilitation of prisoners. *See Barnett v. Centoni*, 31 F.3d 813, 815-16. In addition, federal courts "should 'afford appropriate deference and flexibility' to prison officials [when evaluating the] proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995). It is well established that the "[l]egitimate goals of a correctional institution include the preservation of internal order and discipline." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9h Cir.1995).

### Plaintiff's C-Status

Plaintiff's assertions that he was placed on C-status in retaliation for filing grievances is not supported by the evidence. The undisputed facts establish that Plaintiff incurred five serious rules violation reports prior to July 2019. (Doc. 51-2, ¶¶ 5-9.) Plaintiff was already on C-status in July 2019. (*Id*., ¶ 16.) C-status was continued or extended after the August 21, 2019 classification committee hearing because Plaintiff had suffered two rules violation reports within 180 days. (*Id*., ¶¶ 19-20.) It is also undisputed that the institution's classification committee determines an inmate's C-status and that none of the named Defendants were members of the classification committee or involved in its determinations. (*Id*., ¶¶ 14, 21.) Nor did any of the Defendants issue the rules violation reports or participate as hearing officers during the related proceedings. (*Id*., ¶¶ 22-25.) Plaintiff's belief that Defendants Wilson and Llamas wanted to keep him on C-status (Webb Depo., 94:12-95:6) is mere speculation, and his belief is insufficient to overcome Defendants' evidence of a legitimate penological goal. *Summers*, 127 F.3d at 1152.

### The Cell Searches

Plaintiff alleges the cell searches of September 11, October 11, October 15 and October 28, 2019, were conducted in retaliation for his filing grievances. A review of the evidence reveals otherwise.

First, when Plaintiff's cell was searched on September 11, 2019 and October 11, 2019, contraband televisions were found. (*See* Doc. 51-2, ¶ 47.) Controlling contraband within a prison

1  is a legitimate penological interest. *Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010). But a

2  facially legitimate security measure, such as a search or a confiscation, may be actionable under if

3  it is carried out for an improper motive, such as retaliation for engaging in constitutionally

4  protected conduct. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1995). Here, Plaintiff

5  testified at his deposition that he was aware that televisions could not be possessed while an

6  inmate was on C-status and that he was on C-status when the contraband televisions were located.

7  (Webb Depo., 37:5-14m 62:11-19, 65:5-7.) Plaintiff also testified he did not know whether

8  Fugate or Wilson was involved in those searches and did not have any evidence that they were.

9  (Webb Depo., 62:20-63:14, 68:17-69:5.) Plaintiff's evidence fails to create a genuine issue of

10  material fact.

11      As for the October 15, 2019 search, Plaintiff testified Fugate was not involved in the search

12  and he did not know whether Wilson ordered that search. (Webb Depo., 72:3-8.) Regarding the

13  search of October 28, 2019, Plaintiff testified he did not know if Wilson ordered the search, and

14  that Fugate was not involved. (Webb Depo., 73:24-74:4.) Plaintiff's testimony concerning

15  Defendant Llamas and any connection she may have to the September and October 2019, cell

16  searches indicates either a lack of knowledge or is based on nothing more than speculation and

17  hearsay. (*See, e.g.*, Webb Depo., 53:20-55:2, 59:17-61:14, 63:15-64:6, 65:8-12, 67:11-17, 69:6-

18  14, 70:11-72:2, 73:5-23, 74:18-75:9.)

19      When asked if there were "additional cell searches that go on during modified program,"

20  Plaintiff testified, "Not that I know of." (Webb Depo., 38:4-8.) However, the undisputed evidence

21  indicates that in addition to the required three random cell searches conducted on each officer's

22  daily shift resulting in 90 cell searches within a given building per month, additional cell searches

23  occur during modified programming which was in place in Facility 3C where Plaintiff was

24  housed "during most of 2019" as a result of STG[5] riot, violence and contraband concerns. (*See*

25  Doc. 51-2, ¶¶ 40-45; *see also* Doc. 51-6, ¶ 3 [Fugate Decl.]; 51-5, ¶ 17 [Llamas Decl.]; 51-4, ¶ 3

26  [Wilson Decl.].)  The undisputed evidence further indicates neither Fugate nor Wilson were

27  _____

28  [5]Plaintiff testified he was a "Crip" and part of an STG group. (Webb Depo., 39:10-14.)

1  involved in the searches after the July 18, 2019 search. (Doc. 51-6, ¶ 7 [Fugate Decl.]; 51-4, ¶ 7

2  [Wilson Decl.].)

3      Conducting random cell searches to detect and suppress contraband is a quintessentially

4  legitimate penological goal. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). Random cell

5  searches serve to protect the safety of prisoners and staff, and to promote the security of the

6  institution. The unpredictability of random cell searches makes them an effective tool in the fight

7  against the proliferation of contraband. *Id*. at 528. In sum, Plaintiff fails to offer sufficient

8  evidence setting forth a genuine issue of material fact to support his contentions. *Lee v. Murphy*,

9  844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations are not sufficient to defeat a motion for

10  summary judgment); *Blair Foods, Inc*., 610 F.2d at 667.

11                    Plaintiff's Removal from the Clerk Position

12      Plaintiff alleges he was removed from his clerk position[6] in retaliation for filing grievances.

13  However, the undisputed facts indicate Plaintiff was removed for a legitimate correctional

14  purpose: failing in his work duties. (Doc. 51-2, ¶¶ 9, 27-29, 38, 48; 51-5, ¶ 8.)

15      Title 15, section 3062, subsection (k), of the California Code of Regulations provides that a

16  "male inmate may not possess or wear earrings." Plaintiff admitted at his deposition that he wore

17  earrings, and that Wilson advised him the earrings would be confiscated. (Webb Depo., 80:1-6;

18  *see also* Doc. 51-4, ¶ 9 [Wilson observed Plaintiff wearing earrings on July 17, 2019].)

19      Defendant Llamas' declaration indicates she removed Plaintiff from his clerk and MAC

20  representative positions for failing to meet expectations, including the failure to comply with

21  lawful orders. (Doc. 51-5, ¶ 8.) Those positions "are intended for inmates who set a good example

22  for other inmates, including by complying with orders." (*Id*., ¶ 9.) Llamas states Plaintiff's

23  "mounting RVRs and repeated failures to comply with orders made it difficult for him to function

24  as a program clerk or MAC representative." (*Id*.) Defendant Wilson declares Plaintiff was

25  removed "from his clerk position after he failed to comply with orders to relinquish his earrings"

26  _____

27  [6]Generally, prisoners have no constitutional right to hold a paid position in prison. *Harris v. Sivley*, 951 F.2d 360 (9th Cir. 1991) ("Prisoners have no constitutional right to a prison job"); *Chapman v. Plageman*, 417 F.Supp. 906, 907 (W.D. Vir. 1976) ("[A]n inmate has no constitutional right to any particular job status while incarcerated").

28

1   by Llamas. (Doc. 51-4, ¶ 5.) Defendant Fugate declares he has "no knowledge as to when or why

2   [Plaintiff] stopped working as a program clerk." (Doc. 51-6, ¶ 5.) These declarations indicate that

3   Defendant Llamas removed Plaintiff from his clerk position to further the legitimate penological

4   goal of preserving institutional order and discipline. *See Schroeder*, 55 F.3d at 461; *Johnson v.*

5   *Crutchfield*, No. 1:05-CV-0351 AWI DLB P, 2008 WL 2404265, at *2 (E.D. Cal. June 11, 2008)

6   ("In light of Plaintiff's admitted conduct and Plaintiff's previous job record, Plaintiff cannot show

7   Defendants' filing of the 115 Rules Violation and removing him from his job were without any

8   legitimate correctional purpose. Given Plaintiff's burden to show 'that there were no legitimate

9   correctional purposes motivating' these actions, the presence of evidence showing some

10  legitimate correctional purpose defeat's Plaintiff's claim").

11       A reasonable factfinder could not find that any Defendant removed Plaintiff from his

12  clerical position solely to punish Plaintiff for filing grievances. *See Rizzo*, 778 F.2d at 532.

13                    Plaintiff's Removal from the MAC Representative Position

14       Finally, Plaintiff alleges he was removed from his MAC representative position in

15  retaliation for filing grievances. The undisputed facts indicate Plaintiff was removed for a

16  legitimate correctional purpose: numerous rules violation reports and failures to obey lawful

17  orders. (Doc. 51-2, ¶¶ 5-11, 38.)

18       As indicated above, "[t]o prevail on a retaliation claim, a prisoner must show that the

19  challenged action 'did not reasonably advance a legitimate correctional goal.'" *Brodheim*, 584

20  F.3d at 1269 n.3 ("On summary judgment, the plaintiff must demonstrate there is a triable issue of

21  material fact on each element of his claim, as opposed to merely alleging facts sufficient to state a

22  claim"), 1271; *see also Pratt*, 65 F.3d at 806 ("The plaintiff bears the burden of pleading and

23  proving the absence of legitimate correctional goals for the conduct of which he complains").

24  Plaintiff has failed to show that Defendants' actions lacked legitimate correctional goals.

25       As previously noted, Defendant Llamas' declaration states she removed Plaintiff from his

26  clerk and MAC representative positions for failing to meet expectations, including the failure to

27  comply with lawful orders. (Doc. 51-5, ¶ 8.) Those positions are intended for inmates to set a

28  good example for other inmates, by complying with orders. (*Id*., ¶ 9.) Llamas states Plaintiff's

"mounting RVRs and repeated failures to comply with orders made it difficult for him to function as a program clerk or MAC representative." (*Id.*) Defendant Wilson states Plaintiff was removed "from his clerk position after he failed to comply with orders to relinquish his earrings" by Llamas. (Doc. 51-4, ¶ 5.) Defendant Wilson also states he has "no knowledge as to when or why [Plaintiff] because a MAC representative or when or why he was no longer a MAC representative" and that he "was not involved in any decision regarding Plaintiff and the MAC." (Doc. 51-4, ¶ 6.) These declarations indicate that Defendant Llamas removed Plaintiff from his MAC representative position to further the legitimate penological goal of preserving institutional order and discipline. *See Schroeder*, 55 F.3d at 461; *Johnson,* 2008 WL 2404265, at *2; *see also Brown v. Kavanaugh*, No. 1:08-cv-01764-LJO-BAM PC, 2012 WL 4364120, at *15 (E.D. Cal. Sept. 21, 2012) ("The Court finds that Plaintiff has failed to dispute Defendant Kavanaugh's evidence that Plaintiff was suspended from his position as a MAC representative on November 9, 2008, because of Plaintiff being found guilty of failing to comply with direct orders of correctional officers on August 26, 2008, and causing a disturbance and failing to comply with the direct orders of correctional officers on November 9, 2008. No genuine issue as to any material fact exists and Defendant Kavanaugh is entitled to summary adjudication on the claim that Defendant Kavanaugh suspended him as a MAC representative on November 9, 2008, in retaliation for filing grievance"), findings and recommendations adopted, 2012 WL 5336710 (E.D. Cal. Oct. 26, 2012).

A reasonable factfinder could not find that any Defendant removed Plaintiff from his MAC representative position solely to punish him for filing grievances. *See Rizzo*, 778 F.2d at 532.

**F.  Qualified Immunity**

In the alternative, Defendants assert a right to qualified immunity. The defense of qualified immunity shields government officials from liability. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Qualified immunity only becomes relevant if a court determines that a constitutional violation has occurred. Because the Court finds Defendants are entitled to summary judgment, the Court need not determine whether Defendants are entitled to qualified immunity. *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007).

1

**G.  Conclusion**

2

    In sum, this record, taken as a whole, would not lead a rational trier to fact to find for

3

Plaintiff. *Matsushita*, 475 U.S. at 587. Therefore, Defendants are entitled to summary judgment.

4

Fed. R. Civ. P. 56(a).

5

    **VII.  ORDER**

6

    For the reasons set forth above, Defendants' motion for summary judgment is (Doc. 51) is

7

**GRANTED**. Judgment shall be entered in favor of Defendants. The Clerk of the Court is directed

8

to vacate any pending deadlines and to close this case.

9

10

IT IS SO ORDERED.

11

Dated:  **November 28, 2023**            */s/ Sheila K. Oberto*

12

                           UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28